# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BANK OF AMERICA, N.A., | Case No. 2:16-cv-00673-KJD-DJA |
| Plaintiff, | ORDER |
| v. | |
| INSPIRADA COMMUNITY ASSOCIATION, *et al.*, | |
| Defendants. | |

Presently before the Court is Defendant LVDG, LLC's Motion for Summary Judgment (#51). Plaintiff filed a response in opposition (#60) to which Defendant LVDG replied (#69).

Also, before the Court is Defendant Leach Johnson Song & Gruchow LTD's Motion for Summary Judgment (#57). Plaintiff filed a response in opposition (#64) to which Leach Johson replied (#75).

Also, before the Court is Defendant Inspirada Community Association's Motion for Summary Judgment (#58). Plaintiff filed a response in opposition (#65) to which Inspirada replied (#74).

Finally, before the Court is Plaintiff Bank of America, N.A.'s, Motion for Partial Summary Judgment (#59). Defendant Inspirada Community Association ("Inspirada") filed a response in opposition (#66). Defendant Leach Johnson Song & Gruchow LTD ("Leach Johnson") also filed a response in opposition (#67). Defendanat LVDG also filed a response in opposition (#68). Plaintiff filed a unified reply (#76) to the oppositions. Plaintiff has also filed a Motion for Leave to File Supplemental Authority (#63) in support of its motion. Defendant LVDG filed a response (#70) to which Plaintiff replied (#71).[1]

---

[1] The motion to supplement is granted to the extent that the Court will consider Plaintiff's

I. Facts

On or about October 22, 2008, Robert and Judy Colegrove ("Borrowers") purchased a home at 3233 Via Seranova, Henderson, NV 89044 ("the Property"). The Property is subject to the Declaration of Covenants, Conditions & Restrictions and Reservations of Easements ("CC&Rs") of Defendant Inspirada Community Association ("Inspirada" or "the Association"). Borrowers failed to pay the Association assessments due under the CC&Rs. As a result of Borrower's failure to pay assessments, on March 25, 2011, a Notice of Delinquent Assessment was recorded with the Clark County Recorder's office.

On June 2, 2011, a Notice of Default and Election to Sell was recorded against the Property. On July 5, 2011, Leach Johnson received a letter from BANA's agent, law firm Miles, Bauer, Bergstrom & Winters, LLP ("Miles Bauer"), in which BANA offered to pay nine months assessments and asking for "a breakdown of the HOA arrears." Instead of simply informing the agent of the amount of the superpriority lien, Leach Johnson responded on July 6, 2011 asserting that "[p]ursuant to NRS and NAC Chapter 116, including NRS 116.31175 and NAC 116.405, the Association may not disclose confidential owner account information to anyone other than the owner unless the disclosure is authorized by the owner." Attached to the July 6, 2011 letter was an Authorization to Release Unit Owner's Assessment Account Records to allow the Bank to obtain the authorization of Borrowers. Leach Johnson advised Miles Bauer that once he obtained the consent of the borrower, it would release the owner account information to the Bank to allow it to submit a payoff. The Bank neither responded, nor did it obtain the consent of Borrowers to allow the Association to release the account information.

On April 30, 2012, a Notice of Foreclosure Sale was recorded against the Property. The Notice of Sale was mailed to the Borrowers, BAC Home Loans Services, LP, MERS and others. On August 22, 2013, the Property was sold at foreclosure to LVDG LLC Series 128 for $8,200.00. Plaintiff BANA then filed the present action. The parties have each filed summary judgment seeking a declaration as to whether Inspirada's foreclosure extinguished BANA's lien or whether LVDG purchased the property subject to the lien.

---

arguments regarding Jessup contained in its briefs. No further briefing will be required.

II. Standard for Summary Judgment

The purpose of summary judgment is to avoid unnecessary trials by disposing of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986); Nw. Motorcycle Ass'n v. U.S. Dept. of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). It is available only where the absence of material fact allows the Court to rule as a matter of law. Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 322. Rule 56 outlines a burden shifting approach to summary judgment. First, the moving party must demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to produce specific evidence of a genuine factual dispute for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine issue of fact exists where the evidence could allow "a reasonable jury [to] return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court views the evidence and draws all available inferences in the light most favorable to the nonmoving party. Kaiser Cement Corp. v. Fischbach & Moore, Inc., 793 F.2d 1100, 1103 (9th Cir. 1986). Yet, to survive summary judgment, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

III. Analysis

Plaintiff has filed for summary judgment on its claims and the opposing parties have filed for summary judgment on the claims against them. For the reasons stated below, the Court finds that BANA's deed of trust was extinguished by the HOA's foreclosure of its superpriority lien. Therefore, BANA's motion for summary judgment is denied and Defendants' motions for summary judgment are granted.

    A. Foreclosure of the Superpriority Lien

        1. Tender

Bank of America contends that its attempt to ascertain and pay the superpriority amount of Inspirada's lien constituted valid tender and preserved its deed of trust. The Nevada Supreme Court has addressed whether valid tender preserves a lender's deed of trust in a series of recent cases. In Bank of America, N.A. v. SFR Invs. Pool 1, LLC, the Court definitively held that a lender's valid tender prior to the association's foreclosure preserves the lender's first deed

of trust. 427 P.3d 113, 118 (Nev. 2018) ("Diamond Spur"). Tender is valid if (1) it pays the entire superiority lien (id. at 117) and (2) it is unconditional or insists only on conditions the tendering party has a right to insist upon (id. at 118). The tendering party is under no obligation to "keep [the tender] good" or deposit the tender into an escrow or court-established account. Id. at 120–21. At bottom, valid tender voids the association's foreclosure of the superpriority portion of the association's lien, which results in the buyer taking the property subject to the lender's first deed of trust. Id. at 121.

Then, in Bank of America, N.A. v. Thomas Jessup, LLC Series VII, the Nevada Supreme Court reaffirmed the tender rule and carved out an exception where an association makes clear that it will reject tender. 435 P.3d 1217 (Nev. 2019). Thus, a lender can preserve its deed of trust against an association's foreclosure by calculating the superpriority balance and tendering payment for that amount. Diamond Spur, 427 P.3d at 117. Or, even if money never changes hands, the lender's deed of trust survives foreclosure if it attempted to tender payment, but the association rejects that payment. Thomas Jessup, 435 P.3d at 1220. This Court has adopted the Nevada Supreme Court's reasoning. See RH Kids, LLC v. MTC Fin., 367 F.Supp.3d 1179, 1185–86 (D. Nev. 2019); Deutsche Bank Nat'l Tr. Co. v. SFR Invs. Pool 1, LLC, No. 2:17-cv-0457-KJD-GWF, 2018 WL 5019376 (D. Nev. Oct. 16, 2018).

However, in the present action, BANA has made no showing that it tendered the superpriority portion of the lien. Instead, BANA asserts that the undisputed facts show that Inspirada and/or Leach Johnson obstructed their attempt to ascertain the superpriority amount. However, BANA admits that it did not attempt to obtain the Borrower's permission to access their account information, it did not attempt to calculate the superpriority lien based on other information and it did not tender the full amount of the lien reserving its right to seek a refund for overpayment. Additionally, there was no clear communication by Leach Johnson or Inspirada that tender would be rejected if made. See Jessup, 435 P.3d at 1217, 1220. There is no case cited where sufficient tender was found by merely offering to pay the amount but failing to do so, without more. See, e.g., See RH Kids, 367 F.Supp.3d 1179, 1185–86 (D. Nev. 2019); Bank of America, N.A. v. Sagecreek Homeowners Assoc., 2019 WL 3325805 *4 (D. Nev. 2019) (only

reasonable construction of agent's letter to bank stating that HOA did not believe that it had to provide an account ledger in the absence of lender foreclosure was that it would reject any tender). Just the opposite, Leach Johnson stated that it would provide the account ledger with signed authorization.

In the absence of a valid tender, the Court denies Plaintiff's motion for summary judgment on this claim and grants Defendants' motions. The foreclosure sale extinguished Plaintiff's lien.

### 2. Constitutionality of NRS § 116

As an alternative argument, BANA argues that NRS § 116 is unconstitutional on its face and as applied under the facts of this case.

#### a. NRS § 116 is Facially Constitutional and was Applied Constitutionally Here Because BANA Received Adequate Notice of the HOA-Foreclosure Sale

First, the Court must determine whether and to what extent the Ninth Circuit's determination in Bourne Valley Court Trust v. Wells Fargo Bank, N.A. binds its decision in this case. 832 F.3d 1154 (2016). The parties' dispute arises out of the disagreement between the Ninth Circuit and Nevada Supreme Court regarding the facial constitutionality of the so-called "opt-in" notice provision of NRS § 116.3116(2). See id. at 1158. The Nevada Supreme Court has since considered—and rejected—the Ninth Circuit's reasoning in Bourne Valley. SFR Inv. Pool 1, LLC v. Bank of New York Mellon, 422 P.3d 1248 (Nev. 2018) ("SFR 2").

##### 1. Given the Nevada Supreme Court's Contrary Decision, Bourne Valley's Determination that NRS § 116 is Facially Unconstitutional No Longer Binds This Court

The Ninth Circuit's holding in Bourne Valley hinges on two important points: state action and an impermissible "opt-in" notice scheme. Bourne Valley, 832 F.3d at 1158, 1160. Related to state action, the Court found that NRS § 116's superpriority-lien scheme so degraded a lender's property interest that the passing of the statute itself constituted state

1  action. Id. at 1160. In other words, there was state action because but for the enactment of the
2  statute, a bank would have a fully secured interest in a property. Id.

3  As for notice, the Court determined that that NRS § 116.3116(2) created an
4  unconstitutional "opt-in" scheme that provided notice only to those parties who asked for it—
5  parties that may not have known that their deed of trust was at risk. Id. at 1158. Reaching this
6  conclusion, the Court rejected the argument that NRS § 116 incorporated NRS § 107.090, which
7  required notice to other parties whose deeds of trust could be extinguished by the HOA's
8  superpriority lien. Id. at 1159 (citing NRS § 107.090(3)(b)) (requiring notice by registered or
9  certified mail to every entity "with an interest or claimed interest . . . subordinate to the deed of
10 trust"). Incorporation would cure the "opt-in" notice deficiency but would also "render the
11 express notice provisions of [NRS §] 116 entirely superfluous. Id. Having found state action and
12 an impermissible "opt-in" notice scheme, the Court declared § 116 facially unconstitutional.

13 The Nevada Supreme Court disagreed. After Bourne Valley, another Court in this district
14 certified a question to the Nevada Supreme Court seeking clarification whether incorporation of
15 NRS § 107.090 required an HOA to provide notice of default or notices of sale to subordinate
16 entities even when those entities did not request notice. SFR 2, 422 P.3d at 1250. The Nevada
17 Supreme Court broke from the Ninth Circuit and determined that NRS § 116 indeed incorporated
18 the notice provisions in NRS § 170.090. Id. at 1253. In fact, the Nevada Supreme Court
19 considered the Ninth Circuit's position and expressly "decline[d] to follow the majority holding
20 in Bourne Valley." Id. By incorporating § 107.090, the Nevada Supreme Court eliminated the
21 "opt-in" notice scheme rendering the statute facially constitutional. Finding no constitutional
22 deprivation, the Court did not reach the question of state action.

23 In light of SFR 2, Bourne Valley is no longer binding on this Court so far as it relates to
24 the facial constitutionality of NRS § 116. A state's highest court has the final word on the
25 interpretation of state law. Gurley v. Rhoden, 421 U.S. 200, 208 (1975). Thus, Bourne Valley's
26 interpretation of NRS § 116 was only binding absent the Nevada Supreme Court's contrary
27 finding. Owen v. United States, 713 F.2d 1461, 1464 (9th Cir. 1983); Miller v. Gammie, 335
28 F.3d 889, 892–93 (9th Cir. 2003) ("where the reasoning or theory of . . . prior circuit authority is

clearly irreconcilable with the reasoning or theory of intervening higher authority, [the Court] should consider itself bound by the later controlling authority").

Bourne Valley's holding that NRS § 116 is facially unconstitutional is irreconcilable with the Nevada Supreme Court's holding in SFR 2. Therefore, inasmuch as BANA argues that Bourne Valley controls the facial constitutionality of § 116, the Court rejects that argument.

### b. The Notice Required Under NRS § 107.090 Is Constitutionally Adequate Because It Alerted BANA to the Foreclosure Action and Gave the Bank an Opportunity to Object

BANA next argues that, despite the incorporation of NRS § 107.090, NRS § 116 is still unconstitutional because the notice it required is constitutionally deficient. The argument is two-fold. First, BANA argues that Bourne Valley correctly determined that Nevada's implementation of NRS § 116 constitutes state action for purposes of its due process claim, a claim that the Nevada Supreme Court has not addressed. It contends that Bourne Valley's state-action decision survived SFR 2 because whether legislative enactment constitutes state action is a purely federal question. Second, the bank argues that § 116's notice requirements as incorporated did not sufficiently warn lenders that their property interests were at stake. Because the Court finds that BANA received constitutionally adequate notice, it need not determine whether enactment of NRS § 116 constituted state action. Accordingly, the Court turns to § 107.090's notice provision.

Section 107.090 requires the HOA—through its trustee or agent—to provide notice of default (1) to each person who has requested it and (2) to each person with an interest subordinate to the HOA's deed of trust. NRS § 170.090(3)(a)–(b). The statute ensures that a lender or other lien holder receives notice if they stand to lose their interest due to the HOA foreclosure. Here, the HOA recorded at least one notice of default, and the bank does not dispute that it received notice. On June 2, 2011, HOA-trustee Leach Johnson recorded a Notice of Default and Election to Sell. In capital letters the notice warned that failure to pay the delinquent balance could cause the homeowner to lose their home. Id. Next, Leach Johnson

recorded a Notice of Trustee's Sale on April 30, 2012, which warned of an impending foreclosure sale unless the parties satisfied the delinquent HOA assessments.

BANA argues that those two recorded notices were insufficient to alert the bank that its deed of trust was at risk for two reasons. First, the bank contends the notice was insufficient because it did not reveal the existence of a superpriority lien that threatened to extinguish all other liens And second, the bank argues the notices were insufficient because they did not adequately instruct the bank how to protect its deed of trust from being extinguished.

Due process requires notice that is "reasonably calculated" to alert interested parties to the action against them and provide them an opportunity to object. Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950). However, due process does not require actual notice of an impending action. Jones v. Flowers, 547 U.S. 220, 226 (2006). Rather, the provided notice must be "reasonably certain" to inform the other party of the pendency of the action. Nozzi v. Housing Auth. of City of Los Angeles, 806 F.3d 1178, 1194 (9th Cir. 2015) (citing Mullane, 339 U.S. at 314).

Here, the HOA trustee provided notices that adequately informed BANA that the HOA intended to foreclose on the Property. In tandem, NRS § 116 also put the bank on notice that the HOA's foreclosure could extinguish its interest in the property. The notice's failure to explicitly inform a lender that its deed of trust is at risk does not render that notice insufficient. It is now settled law in Nevada that a properly conducted non-judicial foreclosure creates a superpriority lien in favor of the HOA, which can extinguish all other deeds of trust. See SFR Invs. Pool 1, LLC v. U.S. Bank, 334 P.3d 408, 409 (Nev. 2014). While § 116's effect on deeds of trust may have been less clear at the time of this foreclosure, the statute nonetheless provided the potential for a lender's deed of trust to be extinguished by HOA foreclosure. The HOA's notices need not articulate points of law that were available to each lienholder in the Nevada Revised Statutes. Nationstar Mortg., LLC v. Amber Hills II Homeowner's Assn., No. 2:15-cv-01433-APG-CWH, 2016 WL 1298108, at *7 (D. Nev. Mar. 31, 2016) ("The fact that a notice does not identify a superpriority amount is of no consequence because [NRS § 116] give lienholders notice that the HOA may have a superpriority interest that could extinguish their security interests").

Instead, the notices only needed to provide information that would reasonably warn other lienholders of some action that could affect their property interests. These notices did just that. Both the Notice of Default and Election to Sell and the Notice of Sale made clear that the HOA was attempting to satisfy the delinquent assessment balance through a foreclosure sale. Those notices, together with NRS § 116's creation of a superpriority lien, provided sufficient notice to BANA that its deed of trust risked being extinguished and gave the bank enough information to challenge the foreclosure.

BANA's next argument—that the HOA's failure to instruct the bank how to cure the superpriority lien rendered the notice unconstitutional—is also unavailing because the HOA need not provide the bank the tools to protect its interest. Due process does not require "an exhaustive guidebook to preserving one's interest." Bank of New York Mellon v. Log Cabin Manor, --- F.Supp.3d---, No. 2:15-cv-2026-MMD-CWH, 2019 WL 302489, at *4 (D. Nev. Jan. 23, 2019). It requires notice of the "pendency of the action." Mullane, 339 U.S. at 314. Notices such as these, that provide the date and time of the imminent foreclosure provided the bank with the information needed to appear and object. Accordingly, the Court finds that NRS § 116.3116's notice scheme was constitutionally adequate. The Court denies Plaintiff BANA's motion for summary judgment on this issue.

### 3. Equitable Relief under Shadow Canyon

Next, BANA argues that even if NRS § 116 is constitutional, the Court should nevertheless unwind or set aside the HOA foreclosure because it was tainted by fraud, unfairness, and oppression. The Court may equitably set aside a foreclosure where evidence of fraud, unfairness, or oppression accompanies a grossly inadequate sales price. Nationstar Mortg., LLC v. Saticoy Bay, LLC Series 2227 Shadow Canyon, 405 P.3d 641 (Nev. 2017) ("Shadow Canyon"); Golden v. Tomiyasu, 387 P.2d 989 (Nev. 1963). Shadow Canyon reinforced that a grossly inadequate sales price is not enough to set aside a foreclosure sale. 405 P.3d at 647. The threshold question thus becomes whether there is evidence of fraud, unfairness, or oppression in the HOA sale. If so, the Court then determines whether the sale price was grossly inadequate. If

1 | the Court answers both questions affirmatively, it may equitably unwind or reform the
2 | foreclosure sale. See id.

BANA argues that a clause requiring judicial foreclosure of an HOA lien in the HOA's CC&Rs and the fact that Leach Johnson took the position in other litigation that the HOA superpriority lien did not attach until the bank foreclosed on its deed of trust evince an unfair or fraudulent sale. The judicial foreclosure clause in the CC&Rs does not rise to the level of direct misrepresentation necessary to demonstrate fraud or unfairness and does not justify unwinding this foreclosure. At bottom, the provisions in community CC&Rs cannot override state statutes. See, e.g., SFR Invs. Pool 1, LLC v. U.S. Bank, 334 P.3d 742, 757–58 (Nev. 2014) ("Nothing in NRS 116.3116 expressly provides for a waiver of the HOA's right to a priority position for the HOA's super priority lien . . . [t]he mortgage savings clause thus does not affect NRS 116.3116(2)'s application in this case"); Bank of America, N.A. v. Azure Manor/Rancho de Paz Homeowners Ass'n., No. 2:16-cv-0765-GMN-GWF, 2019 WL 636973, at *6 (D. Nev. Feb. 14, 2019) (mortgage protection clauses cannot supersede the provisions of NRS § 116).

However, the Nevada Supreme Court and this Court have recognized that a clause in the CC&R's coupled with an HOA's direct misrepresentation of the safety of senior deeds of trust can render a foreclosure sale unfair. Shadow Canyon, 405 P.3d at 648 n.11 (citing Zyzzx2 v. Dizon, No. 2:13-cv-1307-JCM-PAL, 2016 WL 1181666, at *5 (D. Nev. Mar. 25, 2015) ("irregularities that may rise to the level of fraud include . . . an HOA's representation that the foreclosure sale will not extinguish the first deed of trust")). Zyzzx2 offers similar facts to this case. There, a Court in this district analyzed a non-judicial foreclosure that threatened a Wells Fargo first deed of trust. 2016 WL 1181666, at *1. Like here, Wells Fargo argued that the foreclosure sale was commercially unreasonable in part because of the HOA's CC&Rs. Id. at *5. There, however, the HOA also sent a letter to Wells Fargo and other interested parties confirming that the HOA foreclosure would not affect their deeds of trust. Id. Based on that affirmative misrepresentation, the Court concluded that the HOA's sale was unfair. Id. As a result, the Court granted summary judgment for Wells Fargo and set aside the HOA's foreclosure sale. Id.

Absent here is any direct confirmation from Inspirada to BANA that the CC&Rs immunized the bank's deed of trust from extinguishment or non-judicial foreclosure. Direct confirmation of the judicial foreclosure clause between the HOA and other lienholders is necessary to find unfairness because the judicial foreclosure clause on its own is not enough. Azure Manor, 2019 WL 636973, at *6. In fact, the Court that decided Zyzzx2 has since clarified that its holding hinged upon the HOA's representations in its letter to Wells Fargo. Bayview Loan Servicing, LLC v. SFR Invs. Pool 1, LLC, No. 2:14-cv-1875-JCM-GWF, 2017 WL 1100955, at *9 (D. Nev. Mar. 22, 2017) ("Indeed [Zyzzx2] was rendered *in light of the combination* of the mortgage protection clause and the HOA's misleading mailings") (emphasis added).

BANA's argument that Leach Johnson took the position in other litigation that its deeds of trust were safe is not evidence of fraud or unfairness in this case. Leach "joined a brief" in an unrelated case, BAC Home Loans Servicing, LP v. Stonefield II HOA, 2:11-cv-00167-JCM-RJJ, that the HOA lien's superpriority status was contingent upon the bank first foreclosing on its deed of trust. Admittedly, this errant representation—intentional or not—approaches the level of direct misrepresentation necessary to set aside the foreclosure. However, Leach Johnson's joinder and subsequent arbitration brief, which was not filed until after the foreclosure sale in this case, could not have affected BANA's actions in this case. Further, the arbitration decision cited by BANA acknowledges that other arbitrators had come to a different conclusion. Therefore, the Court finds that those actions do not rise to the level of unfairness found in Zyzzx2.

Likewise, BANA has not shown that the judicial foreclosure clause in the HOA's CC&Rs chilled bidding and depressed the sales price. The bank argues that no rational buyer would pay fair market value for the property because the CC&Rs preserved the existing deed of trust. As a result, the HOA sale could not recover both the HOA's delinquent assessments and the amount necessary to cure the default on the bank's deed of trust. However, BANA has not provided evidence that the CC&Rs had any effect on the sales price whatsoever. Accordingly, the Court

finds that the judicial foreclosure clause did not render the HOA sale unfair. Relief under Shadow Canyon is denied.[2]

IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant LVDG, LLC's Motion for Summary Judgment (#51) is **GRANTED**;

IT IS FURTHER ORDERED that Defendant Leach Johnson Song & Gruchow LTD's Motion for Summary Judgment (#57) is **GRANTED**;

IT IS FURTHER ORDERED that Defendant Inspirada Community Association's Motion for Summary Judgment (#58) is **GRANTED**;

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File Supplemental Authority (#63) is **GRANTED in part**;

IT IS FURTHER ORDERED that Plaintiff Bank of America, N.A.'s, Motion for Partial Summary Judgment (#59) is **DENIED**;

IT IS FINALLY ORDERED that the Clerk of the Court enter **JUDGMENT** for Defendants and against Plaintiff.

Dated this 26th day of September, 2019.

_____
Kent J. Dawson
United States District Judge

---

[2] Any issues raised by Plaintiff that were not addressed directly by the Court were found to be unmeritorious. For example, Plaintiff's supremacy clause arguments have been rejected by the Ninth Circuit. Bank of Am. v. Arlington West Twilight Homeowners Assoc., 920 F.3d 620, 624 (9th Cir. 2019).